Roberts *v.* Lane.

---

AMOS M. ROBERTS *vs.* JOHN LANE.

*Promissory note—who is bona fide holder.*

The defendant made and indorsed in blank a note, on six months, payable to his own order, which within a week was cashed by the bank of which the plaintiff was president, under his direction without further indorsement. Hearing afterward that the maker alleged fraud in the origin of the paper, and deeming himself negligent in not requiring a second indorser, the plaintiff took the note (long after its maturity) paying his bank the amount of it; *held*, that he was a *bona fide* holder for value and entitled to recover without regard to any fraud in the inception of the paper, or any failure of consideration between the original parties.

The person who puts in suit a note shown to have been obtained from the maker by fraud, assumes the burden of establishing his own good faith. This he may do by showing that he or any prior holder to whose rights he succeeds, has taken the note fairly for value before maturity in the due course of business, and without knowledge of the fraud, or notice of any circumstances of suspicion connected with the paper. It is immaterial what the plaintiff's knowledge may be, if any prior owner whose rights he has, was a *bona fide* holder of the note as above explained.

It does not affect the principles of law above stated, that the note was made to the maker's order and bore only his indorsement, so that it passed by delivery, and the title was apparently derived directly from him, if it is shown that in fact it was purchased by the plaintiff's predecessor in title, in good faith and for value of him to whom the maker first gave it.

It is no defence to a note made and indorsed only by one and the same person, that the plaintiff bought it of a bank which is prohibited by the R. S., c. 47, § 14, from discounting paper without having at least two names to it. This provision is for the security of the stockholders, and does not concern him who obtains the loan upon it.

ON REPORT.

ASSUMPSIT upon a note dated February 15, 1871, for a thousand

dollars, signed by the defendant and payable to his order in six months from its date and indorsed by him in blank. No other name was upon it.

The defendant alleged that the note was obtained from him by the fraud of Smith and of Leavitt, so that neither of them could recover the amount if suit had been brought in the name of either of them.

The plaintiff asserts that he is a *bona fide* holder of the note, while the defendant denies it, and upon the determination of this issue the cause was to be decided upon the facts which are sufficiently stated in the opinion, as well as the legal positions taken.

*Wilson & Woodard* for the plaintiff.

*A. W. Paine* for the defendant.

BARROWS, J. The defendant made a promissory note February 15, 1871, payable to his own order in six months from date, indorsed it in blank and passed it as we infer from the report of the evidence in payment of his subscription for some worthless stock, and he claims that it was procured from him by fraud in which Leavitt and Smith, the first known holders, were so far involved as to prevent them from sustaining an action upon it. But the plaintiff claims to be a *bona fide* holder; and if he is, judgment is to be rendered in his favor.

The evidence shows that within five days after the note was made, it was offered with others of like character, amounting in all to something over $9,500, for discount at the Eastern Bank, Bangor. The plaintiff is president of that bank and also of the Penobscot Savings Bank, which is a large depositor at the Eastern Bank. The cashier of the Eastern Bank, who was also treasurer of the Savings Bank, testifies that the Eastern Bank bought the note and paid Smith the amount of it, less the reasonable discount agreed upon, by a check on the Eliot National Bank of Boston, which was credited with the amount of the check February 20, 1871; that there was no private agreement or understand-

ing with Smith, and no entry of the note upon the books of the Eastern Bank; that neither Smith nor Leavitt gave any reason for not indorsing the notes, nor were they asked to indorse them; that the cashier knew the law required two names, and it was not customary to discount without two; but that the bank had a surplus of money, the president liked the paper and the cashier took it and placed it in the drawer as cash; that they took that course frequently to get interest for the Penobscot Savings Bank when it had a large amount on deposit in the Eastern Bank.

The defendant being called upon to pay the note to the Eastern Bank, refused on the ground that it was obtained from him by fraud. The note lay in the bank drawer for a year, when the plaintiff as he testifies having heard what the talk was about the paper, but regarding it as the duty of the officers to see the bank harmless, and as there was negligence on his own part in not having the notes indorsed, gave his check for the amount paid by the bank and took the note as his own.

As before stated the question for determination is whether he is to be regarded as a *bona fide* holder under the circumstances here proved. The labored argument of the defendant's diligent counsel fails to induce us to indulge even a suspicion that at the time these officers of the Eastern Bank paid out the bank's money for this paper, they were aware of the taint in the inception of the notes, or even that there were any circumstances justly calculated to awaken suspicion in the facts attending the disposition of them by Leavitt and Smith. Nor does the evidence reported warrant the conclusion which the counsel seeks to draw from it, that this suit is prosecuted for the benefit of any party connected with the fraud. Unless we are to discredit the testimony given by the president and cashier, the only fair inference is that the notes were bought outright with the money of the Eastern Bank, where they were openly offered for discount, so soon after they were made that it seems improbable that any suspicion as to their validity could have been excited in any quarter, and that at that time at all events, the officers of the bank who conducted the transac-

tion had no such suspicion, nor any cause for such suspicion, but relied with entire confidence upon the names of the makers for their payment at maturity without question or cavil.

It is equally certain that at the time when the plaintiff took the note in suit from the bank and paid his own money for it, it was overdue and dishonored and he had knowledge that the payment would be contested on the ground of alleged fraud.

Upon this view of the facts, what are the legal rights and liabilities of the parties respectively?

The defendant's allegation of fraud in the inception of the note does not seem to be traversed, and the result is that the burden of proof is on the plaintiff to show that he has the rights of a *bona fide* indorsee. *Perrin* v. *Noyes*, 39 Maine, 384; *Aldrich* v. *Warren*, 16 Maine, 465; *Munroe* v. *Cooper*, 5 Pick., 412; *Peacock* v. *Rhodes*, Doug., 633; *Heath* v. *Sansom, et al.*, 2 B. & Adol., 291, 22 E. C. L. R., 78.

A plaintiff may do this by showing that he himself or any prior holder whose rights he has, came by the note fairly for value before maturity without knowledge of the fraud in the due course of business, unattended with any circumstances justly calculated to awaken suspicion. In the class of cases above cited, and in others where similar language is used, the facts were such that it was obligatory upon the plaintiff to show such a transfer to himself, no previous holder having acquired the paper in that manner.

But it is equally well settled that if any intermediate holder between the plaintiff and defendant took the note under such circumstances as would entitle him to recover against the defendant, the plaintiff will have the same right even though he may have purchased when the note was overdue or with a knowledge of its infirmity as between the original parties.

In *Hascall et al.* v. *Whitmore*, 19 Maine, 102, the payee had put the note in circulation in fraud of his agreement not to part with it, and it appeared that it was utterly without consideration, and that one of the plaintiffs was informed of these facts before he purchased, but it was held that the plaintiffs could nevertheless

recover, because a prior holder having a perfect title could transfer one. Shepley, J., says: "If the relations between himself and the maker only were to be considered he could not recover. But purchasing of one who had no notice he must be considered to be in the same situation, and is entitled to the same protection."

See also *Smith* v. *Hiscock*, 14 Maine, 449; *Woodman* v. *Churchill*, 52 Maine, 58.

It follows that the fact that Roberts took the note from the bank when it was overdue, and with knowledge that its validity would be contested is of no importance if it had once been in the hands of an innocent holder for value without notice.

The defendant, Lane, made this note payable to his own order and indorsed it in blank, thus making it payable to bearer and transferable like a bank bill by mere delivery. *Peacock* v. *Rhodes*, Doug., 633. In this condition he placed it in the hands of those who have abused his confidence; but if thereby he enabled them to get the money on it from those who, ignorant of the equities between him and the holders of the note, relied on his written promise as equivalent to cash, it would be in accordance with fundamental law and justice as well as with the custom of merchants that he, and not the innocent purchaser, should bear the loss. When Leavitt and Smith directly after the inception sold the note and got the money, they parted with their property in it and Lane became liable to pay it to the party who might lawfully be the bearer. Nor do we perceive that it makes any difference under the facts here developed whether that party was the bank or the plaintiff, its financial agent having control of its funds. If by reason of any incapacity in the bank to take on account of the prohibition in the statute the property in the note did not pass to the bank, then the plaintiff who directed the purchase must be deemed from that time the bearer of the note, and responsible to the bank for the use of its funds to make the purchase, and it is not for the promisor to object that the purchase was made with money wrongfully obtained. That was a matter which concerned only the bank, whose trustee and financial agent the plaintiff was.

Roberts *v.* Lane.

But we think the bank did become the owner of the note and rightfully entitled to collect or transfer it, when it was delivered by Leavitt and Smith to the officers of the bank in exchange for the money of the bank.

We do not think that any of the directions and restrictions contained in R. S., c. 47, § 14, relative to banks and banking designed for the protection of their stock and bill holders and depositors, should be so construed as to operate adversely to their interests, and to relieve their debtors from the performance of contracts not expressly made void by the statute, and especially contracts which include no illegal element in their essence or obligation.

We find no authority for such a construction. It is true there is a *dictum* to that effect in *Richmond Bank* v. *Robinson*, 42 Maine, 589. But it seems to us that the *dictum* is opposed to the decision. Robinson claimed to be relieved in a suit brought by the bank upon a note signed by him payable to Foster and Spaulding, and indorsed by the firm to the bank because Foster who was a director in the bank was at the time of the transaction liable to the bank to an amount exceeding eight per cent. of its capital stock.

This is prohibited in the same section, almost in the same breath with the discounting of paper, without at least two responsible names; but Robinson's claim to resist the suit of the bank because its title to the note accrued by the violation of one of these restrictions was overruled, we think rightly, upon the ground that while such violation might make the directors individually responsible to the bank in case of loss, or might make the bank liable to injunction at the instance of the State, still "the defendant cannot avail himself of this failure on their part to observe these requirements of the statute; as to him that violation was entirely collateral; it did not enter into or affect his contract."

The *dictum* seems to be based upon *Springfield Bank* v. *Merrick*, 14 Mass., 322, without noticing the important distinction that in that case the promise and undertaking in the contract it-

self was to do an act which was prohibited by law, i. e., to pay in a forbidden currency.

Of course we agree that the law will not lend its aid to compel a man to do that which is forbidden by statute. But there is no law against a man's paying the promissory note which he has made payable to bearer in lawful money, and the violation of law by the plaintiff's agents is entirely collateral.

So in *Western Bank* v. *Mills*, 7 Cush., 539, the contract itself in its stipulations was illegal, usurious, and specially declared void by statute.

In short we think the decision in *Richmond Bank* v. *Robinson*, overrules the *dictum* in the opinion, and is in substance and effect adverse to the position assumed by the defendant. The principles involved and the suggestions made in *Little* v. *O'Brien*, 9 Mass., 423, are applicable to the present case in more than one particular.

There, a corporation in direct violation of a duty imposed by its charter had received the note sued indorsed in blank by the payee, and the officers of the corporation without any legal corporate action thereon had transferred it to the plaintiff by delivery merely. Yet the plaintiff was held entitled to recover.

The defendant here objects that there was no vote of the directors of the bank authorizing the transfer of the note in suit to the plaintiff.

But we think that is a matter between the bank and its officers, of which the defendant cannot avail himself. After such action as here appears by the agents of the bank intrusted with the care and management of its property and notes, it is clear that the bank could not be heard to assert a claim upon this note against the defendant, and it is in the power of the plaintiff to give him a good and legal discharge.

The defendant incurred his loss when he permitted his note payable to the bearer thereof to go into the market and be sold to those who took it in good faith for a full consideration without notice of the equities between him and the first holders,

or reasonable grounds to suspect that it had been procured by fraud. · *Judgment for plaintiff.*

APPLETON, C. J., CUTTING, WALTON and DANFORTH, JJ., concurred.

PETERS, J., did not sit in this case.