## ISRAEL v. GALE.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 265. Argued April 25, 26, 1899. — Decided May 15, 1899.

In this case the trial court at the close of the testimony, which is detailed in the opinion of this court, instructed a verdict in plaintiff's favor, which was affirmed by the Court of Appeals. This court affirms the judgment of the Court of Appeals.

THE case is stated in the opinion.

*Mr. Frank Sullivan Smith* for plaintiff in error.

*Mr. Martin Carey* for defendant in error. *Mr. Wilson S. Bissell* was on his brief.

MR. JUSTICE WHITE delivered the opinion of the court.

The receiver of the Elmira National Bank, duly appointed by the Comptroller of the Currency, sued George M. Israel, the plaintiff in error, on a promissory note for $17,000, dated New York, May 14, 1893, due on demand, and drawn by Israel to the order of the Elmira National Bank, and payable at that bank. The defences to the action were in substance these:

First. That the note had been placed by Israel, the maker,

in the hands of David C. Robinson, without any consideration, for a particular purpose, and that if it had been discounted by Robinson at the Elmira National Bank such action on his part constituted a diversion from the purposes for which the note had been drawn and delivered; that from the form of the note (its being made payable to the bank), from the official connection of Robinson with the bank, he being one of the directors, and his personal relations with the cashier of the bank, as well as from many other circumstances which it is unnecessary to detail, the bank was charged with such notice as to the diversion of the note by Robinson as prevented the bank from being protected as an innocent third holder for value.

Second. Even if the discount of the note was not a diversion thereof from the purpose contemplated by the drawer, the bank was nevertheless subject to the equity arising from the want of consideration between Israel, the drawer, and Robinson, because, although the note may have been in form discounted by the bank, it had in reality only been taken by the bank for an antecedent debt due it by Robinson. And from this it is asserted that as the bank had not parted, on the faith of the note, with any actual consideration, it was not a holder for value, and was subject to the equitable defences existing between the original persons.

At the trial the plaintiff offered in evidence the note, the signature and the discount thereof being in effect admitted, and then rested its case. The defendant thereupon offered testimony which it was deemed tended to sustain his defences. At the close of the testimony the court, over the defendant's exception, instructed a verdict in favor of the plaintiff. On error to the Court of Appeals this action of the trial court was affirmed.

Both the assignments of error and the argument at bar but reiterate and expand in divers forms the defences above stated and which it is asserted were supported by evidence competent to go to the jury, if the trial court had not prevented its consideration by the peremptory instruction which it gave.

The bill of exceptions contains the testimony offered at the trial, and the sole question which arises is, Did the court

rightly instruct a verdict for the plaintiff? From the evidence it undoubtedly resulted that the note was delivered by the maker to D. C. Robinson, by whom it was discounted at the Elmira National Bank. It also established that Robinson at the time of the discount was a director of the bank, had large and frequent dealings with it, that he bore close business and personal relations with the cashier, and occupied a position of confidence with the other officers and directors of the bank. The occasion for the giving of the note and the circumstances attending the same are thus shown by the testimony of the defendant:

"I reside in Brooklyn. I am 42 years of age. I am at present engaged in the insurance business. In the months of April and May, 1893, I was employed in the banking house of I. B. Newcomb & Co., in Wall street, New York, as a stenographer and typewriter. I was not then and am not now a man of property. I know D. C. Robinson. At the time I made this note I did not receive any valuable thing or other consideration for the making of it; I have never received any consideration for the making of the note. I had a conversation with D. C. Robinson at the time of the making of the note. He stated to me the object or purpose for which he desired the note. He said to me that he desired some accommodation notes, and he wanted us clerks to make them, and stated the amount. He said that the reason he wanted the accommodation note was that he had exceeded his line of discount and could not get any more accommodation; that he was building a power house up there (in Elmira) and needed some money to accomplish that purpose, and that if we would give him these notes it would enable him to accomplish that. He also added that we would not be put in any position of paying them at any time; that he would take care of them, and gave us positive assurance on that point, and naturally knowing the man, and thinking that he was a millionnaire, as he probably was at that time, we had no hesitation about going on the notes."

There was no testimony tending to refute these statements or in any way calculated to enlarge or to restrict them.

The defence, then, amounts to this: That the form of the paper and Robinson's relation with the bank and its officers were such as to bring home to the bank the knowledge of the transaction from which the note arose, and that such knowledge prevents a recovery, because Robinson, taking the transaction to be exactly as testified to by the defendant, was without authority to discount the note. Granting, *arguendo*, that the testimony tended to show such a condition of fact as to bring home to the bank a knowledge of the transaction, the contention rests upon a fallacy, since it assumes that the note was not given to Robinson to be discounted, and that his so using it amounted to a diversion from the purpose for which it was delivered to him. But this is in plain conflict with the avowed object for which the defendant testified the note was drawn and delivered, since he swore that he furnished the note because he was told by Robinson that he needed accommodation, that his line of discount on his own paper had been exceeded and that if he could get the paper, of the defendant, he would overcome this obstacle; in other words, that he would be able successfully to discount the paper of another person when he could not further discount his own. This obvious import of the testimony is fortified, if not conclusively proven by the form of the note itself, which, instead of being made to the order of Robinson, was to the order of the Elmira National Bank. The premise then, upon which it is argued that there was proof tending to show that the discount of the note by Robinson at the Elmira National Bank was a diversion, is without foundation in fact. The only matters relied on to sustain the proposition that there was testimony tending to establish that the note was diverted, because it was discounted at the bank to whose order it was payable, are unwarranted inferences drawn from a portion of the conversation, above quoted, which the defendant states he had with Robinson when the note was drawn and delivered. The part of the conversation thus relied upon is the statement that Robinson said, when the note was given, "that he was building a power house up there (in Elmira) and needed some money to accomplish that purpose, and if we would give him these notes it

would enable him to accomplish that." This it is said tended to show that the agreement on which the note was given was not that it should be discounted at the Elmira National Bank, but that it should be used by Robinson for obtaining money to build the power house. In other words, the assertion is that the mere statement, by Robinson, of the causes which rendered it necessary for him to obtain a note to be discounted at the Elmira National Bank had the effect of destroying the very purpose for which the note was confessedly given. When the real result of the contention is apprehended its unsoundness is at once demonstrated. Other portions of the record have been referred to, in argument, as tending to show that it could not have been the intention of the defendant, in giving the note, that Robinson should discount it, but on examining the matters, thus relied upon, we find they have no tendency whatever to contradict or change the plain result of the transaction as shown by the defendant's own testimony.

As the discount of the note at the Elmira National Bank was not a diversion, but on the contrary was a mere fulfilment of the avowed object for which the note was asked and to consummate which it was delivered, it becomes irrelevant to consider the various circumstances which it is asserted tended to impute knowledge to the bank of the purpose for which the note was made and delivered. If the agreement authorized the discount of the note, it is impossible to conceive that knowledge of the agreement could have caused the discount to be a diversion, and that the mere knowledge that paper has been drawn for accommodation does not prevent one who has taken it for value from recovering thereon, is too elementary to require citation of authority.

The contention that although it be conceded the note was not diverted by its discount, nevertheless the bank could not recover thereon because it took the note for an antecedent debt, hence without actual consideration, depends, first, upon a proposition of fact, that is, that there was testimony tending to so show, and, second, upon the legal assumption that even if there was such testimony it was adequate as a legal defence.

The latter proposition it is wholly unnecessary to consider, because the first is unsupported by the record. All the testimony, on the subject of the discount of the note, was introduced by the defendant in his effort to make out his defence. It was shown, without contradiction, that the note had been discounted by Robinson at the bank, and that the proceeds were placed to his credit in account. It was also shown that for some time prior to the day of the discount his account with the bank, to the credit of which the proceeds of the discount were placed, was overdrawn. The exact state of the account on the day the discount was made was stated by the cashier and a bookkeeper of the bank, and was moreover referred to by Robinson. On the morning of the discount the debit to the account of Robinson, by way of overdraft, is fixed by the cashier at $35,400, and by the bookkeeper at $35,000. Robinson made the following statement: "The amount of other notes wiped out the overdraft and made a balance." The bookkeeper's statement is as follows:

"There was an overdraft of $35,000 against Mr. Robinson upon the books of the bank on the morning of May the 4th. There were items coming through the exchanges that amounted to about $73,000, and there was a deposit made of $33,000 to make the overdraft good. These were to take up the items that came through the exchanges. I think that was the way of it. His account would have been overdrawn that night for about $50,000 if it had not been for the entry on the books of the proceeds of these notes."

No other testimony tending to contradict these statements, made by the defendant's own witnesses, is contained in the record. They manifestly show that although at the date of the discount there was a debit to the account resulting from an overdraft that nearly the sum of the overdraft was covered by items of credit, irrespective of the note in controversy, and that subsequent to the credit arising from the note more than the entire sum of the discount was paid out for the account of Robinson, to whose credit the proceeds had been placed. With these uncontradicted facts in mind, proven by the testimony offered by the defendant, and with no testimony tending

the other way, it is obviously unnecessary to go further and point out the unsoundness of the legal contention relied upon.

*Affirmed.*