## TOLL v. MONITOR BINDING & PRINTING CO.

Circuit Court of Appeals, Eighth Circuit. April 23, 1928.

No. 7936.

1. **Appeal and error &#9090;173(1)—Defenses argued for first time on appeal will not be considered.**

Defenses, not presented to the trial court, but argued for the first time on appeal, are too late, and will not be considered by the Circuit Court of Appeals.

2. **Appeal and error &#9090;215(1)—Objections to instructions urged first on appeal will not be considered.**

Objections to instructions of trial court urged for the first time on appeal will not be considered.

3. **Evidence &#9090;511—Evidence of experts based on comparison of handwriting, though not very reliable is admissible for what it is worth.**

In action on note against accommodation indorser, one of defenses being that defendant's name was forged, evidence of experts based on comparison of handwriting, though unsatisfactory and not very reliable, was properly admitted for what it was worth.

4. **Bills and notes &#9090;537(2)—Whether accommodation indorser's name was forged held question for jury under the evidence.**

In action on note against accommodation indorser, one of defenses being that defendant's name was forged, evidence *held* sufficient to go to jury on question of forgery.

5. **Bills and notes &#9090;401—Notary public, who was also assistant teller of holder bank, held authorized to demand payment of note (Gen. St. Kan. 1915, § 6733).**

Notary public, who was also assistant teller of bank which was holder of note, *held* authorized, under Gen. St. Kan. 1915, § 6733, to demand payment of note.

6. **Bills and notes &#9090;405—Facts held to show sufficient exhibition of note to maker on demanding payment (Kansas Negotiable Instruments Law [Gen. St. 1915, § 6601]).**

Where notary public and assistant teller of bank holding note called at office of maker to demand payment, and took matter up with party in charge of office, and stated to such party that he "had note here," there was a sufficient exhibition of note in compliance with Kansas Negotiable Instruments Law (Gen. St. 1915, § 6601).

7. **Bills and notes &#9090;410—Notary's official seal attached to certificate of protest of note is sufficient prima facie proof of its authenticity.**

In the absence of impeachment thereof, the official seal of a notary public attached to the certificate of protest of promissory note for nonpayment is sufficient prima facie proof of its authenticity.

8. **Bills and notes &#9090;330—Under general law, indorsement is necessary to maintain negotiability and to transfer free from equities.**

Under the general law of negotiable instruments, indorsement is necessary to maintain negotiability and to transfer free from equities, although under Kansas Negotiable Instruments Law (Gen. St. 1915, § 6553), a holder might possibly be one for value where there had been nothing more than the delivery of the note.

9. **Bills and notes &#9090;497(1)—Indorsement is presumed to have been made before maturity, when note is in hands of third party.**

When a negotiable promissory note is in the hands of a third party, the presumption will

apply that indorsement was made before maturity.

**10. Bills and notes ⊕⇒525—Evidence held to show that bank from whom plaintiff indorsee took note back on suing accommodation indorser was bona fide holder for value.**

In action on note by indorsee, which had taken it back from bank against accommodation indorser, evidence *held* to show that bank acquired note in due course before maturity for value, and was a bona fide holder, unaffected by any infirmity in it entitling bank, even after note was overdue and dishonored, to transfer as good a title as it held.

**11. Bills and notes ⊕⇒362—One taking negotiable note from bona fide holder occupies same position as transferor, notwithstanding actual notice of defenses.**

Though generally indorsement of negotiable paper after maturity transfers legal title subject to all defenses of which overdue character of paper gives notice, an exception thereto exists where holder takes from the bona fide holder, in which case he occupies same position as his transferor, notwithstanding subsequent holder has actual notice of defenses, was a purchaser after maturity, or is not a purchaser for value.

**12. Bills and notes ⊕⇒362—One taking note from bona fide holder for value before maturity may recover of accommodation indorser, though knowing of accommodation indorsement.**

Where bank was bona fide holder of note before maturity for value, party taking note from bank after maturity could recover against accommodation indorser, even though it had known of accommodation indorsement.

**13. Bills and notes ⊕⇒362—Payee of note participating in infirmity cannot escape result by purchase back from bona fide holder.**

A payee of a note, who participates in any infirmity thereof, cannot escape result of such infirmity by indorsing note to a bona fide holder from whom he may subsequently purchase it back.

**14. Bills and notes ⊕⇒362—Taking back of note by indorsee after maturity did not make note subject to same defense that accommodation maker could assert against original payee.**

That indorsee suing accommodation indorser took note back from bona fide holder for value, after maturity, whether merely to take up an obligation or taking an assignment of holder's right to sue, did not make note subject to same defense of want of consideration that accommodation indorser could assert if suit had been brought by original payee.

**15. Courts ⊕⇒359—Statutes of state where contract is made must be considered in construing contract.**

Though decisions of United States courts are not controlled by decisions of state courts on a question of general commercial paper, the statutes of the state where the contract in question was made must be recognized and considered in construing the same.

**16. Bills and notes ⊕⇒362—Indorsee taking note back from bona fide holder for value could recover of accommodation indorser, though knowing of accommodation indorsement at time of taking note (Gen. St. Kan. 1915, §§ 6553, 6556, 6585).**

Where indorsee took back note from bank which had acquired note in due course before maturity for value, and was a bona fide holder, value having been given on each transfer of note both before and after maturity, *held* that, under Gen. St. Kan. 1915, §§ 6553, 6556, 6585, indorsee had all rights of bank in respect to all parties who had become such prior to such time, and, in suit by indorsee against accommodation maker, it was immaterial that indorsee at time of taking instrument knew of such accommodation indorsement.

**17. Bills and notes ⊕⇒371—Defense of want of consideration held not available to accommodation indorser sued by indorsee taking note back from holder after maturity.**

Even though action of indorsee of note in taking it back from holder after maturity opened door to equitable defenses in note, want of consideration between accommodation indorser and the original payee was not such a defense, since there was no consideration or it would not have been an accommodation indorsement.

**18. Bills and notes ⊕⇒525—Evidence held not to sustain claim that indorsee knew when it took back note after maturity that accommodation indorser claimed it to be forgery.**

In action on note by indorsee taking it back from holder after maturity against accommodation indorser, evidence *held* not to sustain claim that indorsee knew when it took back note that accommodation indorser claimed it to be a forgery.

**19. Bills and notes ⊕⇒514—Evidence that accommodation indorser sued on note had agreed with his employees not to sign note as indorser was not competent or material.**

In action on note against accommodation indorser, evidence that defendant had agreed with his employees not to sign notes was properly excluded as incompetent and immaterial.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Action by the Monitor Binding & Printing Company against Phil R. Toll. Judgment for plaintiff, and defendant brings error. Affirmed.

C. W. German, of Kansas City, Mo. (Morrison, Nugent, Wylder & Berger, William G. Holt, and German, Hull & German, all of Kansas City, Mo., on the brief), for plaintiff in error.

Charles F. Newman, of Springfield, Mo., and Floyd E. Jacobs, of Kansas City, Mo. (Mitchell J. Henderson, of Kansas City, Mo., and Ben M. Neale, of Springfield, Mo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and JOHN B. SANBORN, District Judge.

KENYON, Circuit Judge. The defendant in error, Monitor Binding & Printing Company (hereinafter called the printing company) brought suit against plaintiff in error, Phil R. Toll, upon a certain promissory note in the sum of $5,000, executed June 5, 1920, by the People's College of Ft. Scott, Kan., and due in one year, payable to the order of the People's College, which note was signed by Toll as an accommodation indorser. This note was duly transferred before maturity by the People's College to the printing company in payment of a printing bill of $4,800. The printing company, in addition to canceling said bill, paid to the People's College the sum of $200, the difference between the face of the note and the bill. The printing company negotiated said note before maturity to the Ft. Scott State Bank, and received the money thereon. Upon its maturity, the bank attempted to collect the note, and, failing, proceeded to make protest thereof (proper protest is denied by Toll). The People's College failing to pay the note at maturity, it was taken back by the printing company from the bank, the exact arrangement not appearing in testimony, and the said printing company then commenced this action to recover from Toll.

In the original answer it is claimed that the note was without consideration moving to Toll, and that the printing company acquired it after maturity; that the signature thereon purporting to be Toll's was a forgery. During the trial an amended answer was filed claiming that no proper presentment or protest of the note had been made, and also alleging failure of consideration. The court stated to the jury the issues as raised by the pleadings as follows: "First, whether the name of Phil R. Toll, the defendant, appearing on the back of the note in evidence, is the genuine signature of the defendant; second, whether the note is with or without consideration and therefore void; and third, whether presentment and a demand for payment was lawfully made to the maker so as to fix liability upon the indorsers."

The jury found for the printing company and against Toll for the full amount of the note.

[1, 2] A number of defenses are argued here which were not presented to the trial court, for instance, at the close of plaintiff in error's reply it is urged for the first time that there is a variance between the allegations of the petition and the proof. This is too belated an afterthought to be considered by this court. Objections are also urged to the instructions of the court. No objections were made or exceptions taken to said instructions by counsel for Toll. It is apparent that such objections are now too late. We may say, however, that in our judgment the court's instructions fully covered the questions then at issue, and were apparently fairly satisfactory to both sides. Some of the instructions requested by Toll's counsel were given. A different theory of the defense of want of consideration is presented to us from that in the trial court. The court instructed that the note was made and negotiated for value. Toll now urges the theory of want of consideration between him and the original payee of the note, and claims such defense was available to him. It is quite apparent that the real defense relied on was forgery. If Toll never signed the note, then the printing company had no case. In the opening statement to the jury, with which we are favored in the record, counsel for Toll said: "The defense in this case, in a word, is that the paper which the plaintiff will produce in evidence does not bear upon its back the signature of this defendant, Phil R. Toll. Stripped of all unnecessary discussion and detail, that is the defense."

All other questions were minor compared with this, and so seem to have been regarded by the parties at the trial. Of course, Toll had the right to rely on all defenses that he is entitled to make, and to stand strictly on his rights as an indorser.

[3, 4] On the question of forgery, the jury found against Toll. Complaint is now made that the court erred in admitting in evidence signatures of Toll for the purpose of comparison with his alleged signature on the note without properly qualifying the testimony in its charge to the jury. Both sides used expert testimony as to the alleged signature of Toll. Evidence of experts based on comparison of handwriting is unsatisfactory and not very reliable, but is admissible for what it is worth. 1 Greenleaf on Evidence, § 578; Hammond v. Wolf, 78 Iowa, 227, 42 N. W. 778; Whitaker v. Parker, 42 Iowa, 585; Springer v. Hall, 83 Mo. 693, 53 Am. Rep. 598. Counsel for Toll seem to assume that the printing company's whole case in this record is based on expert evidence. Such is not the fact.

Miss Teagarden, who had charge of Mr. Sheppard's office when he was absent, testified that the note was prepared in the office of the People's College; that at Mr. Sheppard's request, he being president of the col-

lege, she got Toll on the telephone at his home at Greenwood, Mo., and then turned the phone over to Mr. Sheppard, and she heard Mr. Sheppard make an engagement with Toll; that the note without Toll's signature was taken by Sheppard, and he was absent from the college for a couple of days, and when he returned she again saw the note with the name "Phil R. Toll" on the back of it; and that note was the same one which she identified as sued on in this case.

The witness Milligan, who was assistant teller of the Ft. Scott State Bank, called on Toll with reference to the payment of the note. Milligan testified that Toll told him the signature was his; that he wanted Sheppard to take care of the note; that he then wrote a note to Mr. Cunningham, president of the bank, telling him he would be down and see him. This, coupled with the expert testimony, was unquestionably sufficient to enable the jury to pass on the question of Toll's signature. The court was careful in its instructions to define expert testimony and to tell the jury that such testimony was merely advisory and they were not bound thereby, and that they were the judges of what weight they should give the same. It seems to us the question was fully covered by the court, and that Toll has nothing of which to complain in this respect. Certainly there was evidence from which a jury could conclude that Toll signed the note; they so concluded, and it is not for us to disturb that finding.

[5] The court submitted to the jury the question of presentment and protest, and gave an instruction requested by counsel for Toll, which covered the entire matter, as follows:

"The court instructs the jury that the burden of proof is upon the plaintiff to prove by the preponderance of the evidence, which means the greater weight of the evidence (that is, the evidence that is the more satisfactory and convincing to the minds of the jurors) that the promissory note in question in this action was exhibited (that is, shown) to Miss Teagarden at the office of the People's College of Ft. Scott, Kan., after the note became due, by a person authorized to receive payment of the note by the Ft. Scott State Bank, and that payment of the note was then and there demanded of Miss Teagarden at the office of the People's college, and, if you do not so believe from the preponderance of the evidence, you should render a verdict in favor of the defendant."

The jury found against Toll's contention on this question. The general law as to protest by a notary is well settled. Section 6600 of the Kansas Negotiable Instruments Law,

which law is in line with the general law merchant, provides for presentment for payment, and section 6601, provides: "The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it." It is this section that it is claimed was not complied with; i. e., that the note was not exhibited to the maker. Aydelotte was the notary public, and was also assistant teller of the bank. At the time he called at the office of the college, the president, Mr. Sheppard, was not there, and he took the matter up with the party in charge of the office, Miss Teagarden. After Aydelotte had testified with reference to this in rather an indistinct and hazy way, he was recalled and questioned again concerning it. We quote that part of the record which refers to the conversation with Miss Teagarden about the note in question:

"Q. Well, do you remember what you said approximately, or in substance, what was said to her? A. I think I do.

"Q. Will you tell it please? A. 'I have the note here signed by the People's College, J. I. Sheppard, president, that is due and must be paid. It was handed to me to protest if payment is not made.'

"Q. Were you able to get the money? A. No."

As to Aydelotte's authority to demand payment of the note, section 6733 of the General Statutes of Kansas 1915 provides:

"Notaries public shall have authority * * * to demand acceptance or payment of foreign or inland bills of exchange and of promissory notes, and protest the same for non-acceptance or non-payment, as the case may require; and to exercise such other powers and duties as by the law of nations and commercial usage may be performed by notaries public."

Furthermore, Aydelotte was the assistant teller of the bank. There can be no question as to his authority to demand payment.

[6, 7] In discussing a presentment to a bank for payment where a party asked the bank to credit a check to his account and it refused, the court said that this amounted to the dishonoring of the check, and it was not necessary to go through the form of specifically demanding its payment in cash over the counter, saying (Gregg v. George, 16 Kan. 546, 549): "Demand and refusal may be necessary; but no particular form or expression is essential to either. It is sufficient if it clearly appears that the bank, after a demand, refuses to accept the check as of the value its face indicates." Evidently Ayde-

lotte had the note with him. He stated to Miss Teagarden that he "had it here." This is certainly sufficient as an exhibition of the note. Gilpin v. Savage, 60 Misc. Rep. 605, 112 N. Y. S. 802; Legg et al. v. Vinal et al., 165 Mass. 555, 43 N. E. 518; King v. Crowell, 61 Me. 244, 14 Am. Rep. 560. Not having secured payment, he prepared the proper notices and mailed them to the maker and indorsers. Counsel objected to the introduction in evidence of the proceedings of the notary and his certificate of protest, claiming that the Kansas statute does not provide for its introduction in evidence, but it is universally held, in the absence of impeachment thereof, that the official seal of the notary attached to the certificate of protest is sufficient prima facie proof of its authenticity, 2 Daniel on Negotiable Instruments, § 945, and that such certificate is admissible in evidence. In any event all the facts surrounding the demand for payment and protest of the note here involved were shown by other evidence.

[8] We pass to the alleged defense of failure of consideration. The court apparently, as shown by its instructions, had no particular difficulty with this question. It said: "Aside from any presumptions with respect to value, the court instructs you that the evidence tended to show without contradiction that said note was made and negotiated for value; so this question need not require much consideration by you." There was no exception taken to this instruction. The theory of failure of consideration seems to have been somewhat enlarged since the time of the trial. In the original brief of plaintiff in error it is contended that the printing company was not a holder in due course, that it purchased the note after maturity, and that all the defenses of nonnegotiable paper are available to Toll, and that the situation is the same as far as the printing company is concerned as if this suit were brought against Toll by the payee of the note. In the reply brief it is urged that, as a result of admissions of counsel for the printing company in its brief that all defenses were available to Toll, the printing company is precluded from recovery, because its status reverts back to that of the original payee in the note, that, as there was no consideration for Toll's signature, such defense can now be made against the printing company's case, and that the same must fail because of this want of consideration. This theory is ingenious and novel. Toll had manifested some interest in the People's College, and evidently signed the note to assist the college in raising money. Undoubtedly he was an accommodation indorser. The print-

ing company took the note for value, canceling an indebtedness of the college to it of some $4,800, and giving to the college $200 in cash, which, with the debt, equaled the face of the note. Prior to maturity, the printing company negotiated the note to the State Bank of Ft. Scott, and received full value therefor. Under the general law of negotiable instruments, indorsement is necessary to maintain negotiability and to transfer free from equities, Hadden v. Rodkey, 17 Kan. 429; Daniel on Negotiable Instruments (6th Ed.) vol. 1, § 781a, although under the Kansas Statutes, section 6553, a holder might possibly be one for value where there had been nothing more than delivery of the note.

[9, 10] Was the note indorsed by the printing company to the bank before maturity? Certain it is that at the time of maturity the bank owned the note and had given full value therefor. The indorsement thereon is not clear. It reads, "Pay to the order of" "Monitor Binding & Printing Company, Geo. W. Marble, Pres." Toll contends that this was an indorsement by the bank to the printing company, while the printing company contends that it was an indorsement to the bank by it. Marble was president both of the bank and of the printing company. The indorsement appears to be one in blank, and we think unquestionably is an indorsement by the printing company to the bank. Aydelotte, the notary, when he first testified, stated that this indorsement was not on the note at the time he protested the same; later he said that it was not to his recollection. Mr. Milligan, vice president of the printing company, testified concerning the matter.

"A. We sold it to the bank, to realize on it. We were a small institution and needed the money, and we sold it to the bank.

"Q. Did you get the money on it? A. Yes, sir; that is the reason for that indorsement."

While it is uncertain under the evidence as to just when the indorsement was made, the presumption when the paper is in the hands of a third party will apply that it was before maturity. Daniel on Negotiable Instruments, §§ 728 and 784; Collins v. Gilbert, 94 U. S. 753, 24 L. Ed. 170; Good v. Martin, 95 U. S. 90, 24 L. Ed. 341. The bank therefore acquired the note in due course before maturity for value, was a bona fide holder, and was unaffected by any infirmity in it (except of course defenses that made it absolutely void, such as forgery), and could even after the note was overdue and dishonored, transfer as good a title as it held.

[11, 12] While it is the general doctrine that

an indorsement of negotiable paper after maturity transfers legal title subject to all defenses of which the overdue character of the paper gives notice, an exception thereto exists, as stated in 8 C. J. § 685:

"The rule as to who is a bona fide holder is subject to an exception where the holder takes from a bona fide holder, in which case he occupies the same position as his transferor, notwithstanding the subsequent holder has actual notice of defenses, was a purchaser after maturity, or is not a purchaser for value." The Supreme Court of the United States, in Scotland County v. Hill, 132 U. S. 107, 117, 10 S. Ct. 26, 29 (33 L. Ed. 261), indorses the language of the court in Roberts v. Lane, 64 Me. 108, 111 (18 Am. Rep. 242), as follows:

"If any intermediate holder between the plaintiff and defendant took the note under such circumstances as would entitle him to recover against the defendant, the plaintiff will have the same right, even though he may have purchased when the note was overdue, or with a knowledge of its infirmity, as between the original parties." Cromwell v. County of Sac, 96 U. S. 51, 24 L. Ed. 681; Montclair v. Ramsdell, 107 U. S. 147, 2 S. Ct. 391, 27 L. Ed. 431.

The law is stated by the Supreme Court of Kansas in Underwood v. Fosha, 96 Kan. 240, 245, 150 P. 571, 573, as follows:

"It seems also to be the law that since the past-due note had passed through innocent hands before its maturity, and thus was freed from equitable defenses, it is of no consequence that one who acquires it after its maturity may have had notice of its original infirmities; such last owner can recover on it and does not have to meet equitable defenses. The doctrine has a logical basis. If a third party cannot take commercial paper from an innocent holder free from equitable defenses because such third party knows of its original infirmities, then the rights of the innocent holder are greatly restricted. His market for such paper would be limited to those who like himself had no notice of its original infirmities. Since the innocent holder could collect from the maker, it can make no difference to the maker into whose hands the note may pass."

After maturity, the note is not negotiable, but is subject to assignment, and a transferee of a bona fide purchaser for value before maturity takes the same rights in the note as the transferor had, no matter if assignment is made after maturity. The title secured is as good but no better than the transferor had. Rondot v. Rogers Tp. (C. C. A.) 99 F. 202; Woodman v. Churchill, 52

Me. 58; Gunnison County Commissioners v. Rollins, 173 U. S. 255, 19 S. Ct. 390, 43 L. Ed. 689; Jennings v. Carlucci et al. (Sup.) 87 N. Y. S. 475; Tiedeman on Commercial Paper, § 295; Chester v. Dorr, 41 N. Y. 279, 286; 8 C. J. § 413; Fowler v. Brantly, 14 Pet. 318, 10 L. Ed. 473. So that a party taking the note from the bank after maturity could have recovered even had it known that Toll was an accommodation indorser. Thompson v. Shepherd, 12 Metc. (Mass.) 311, 46 Am. Dec. 676; Weems v. Shaughnessy et al., 70 Hun, 175, 24 N. Y. S. 271.

[13, 14] Does it make any difference that the party taking the note from the bank was the printing company which had originally taken the same by indorsement from the payee? Confusion we think has arisen in this case because of the attempt to apply to the facts here the well-established doctrine that a payee of a note who participated in any infirmity thereof cannot escape the result of such infirmity by indorsing the note to a bona fide holder from whom he may subsequently purchase it back. That would be fraud, and there is no claim of fraud in this case. We quote from 8 C. J. 685:

"This rule (regarding holder taking from a bona fide holder) does not apply, however, where a payee repurchases a bill or note from a bona fide holder; and a holder with notice cannot purge a note of a defense known to him at the time of its transfer to him by merely assigning it to a third person and thereafter obtaining a retransfer." Daniel on Negotiable Instruments, § 805; 7 Cyc. pp. 938, 939, 940; Horan v. Mason, 141 App. Div. 89, 125 N. Y. S. 668; Underwood v. Fosha, 96 Kan. 240, 150 P. 571.

As said in the latter case, if the note should come back into the hands of the original payee or an assignee under him who had notice of the equitable defenses and who had owned it before it passed into the hands of the innocent holder, the original equitable defenses could be maintained. This case refers to original payee or assignee thereof. The printing company was not an assignee of the original payee. It was an indorsee, and had given value for the note, and was a holder for value in due course. There is a difference in the status of an indorsee and an assignee. Taking the note from the bank after maturity by the printing company, whether the arrangement was one made with the bank merely to take up an obligation, or whether it was taking an assignment of the bank's right to sue, would not make the note subject to the same defense of want of consideration that Toll could assert if suit had been brought by the original payee.

[15,16] If the bank took the note for value, and there was no indorsement by the printing company, yet under the Kansas statutes the bank became a holder for value, and the printing company was a holder for value when it took the note back from the bank. We have thus far discussed the case largely in the light of the general law of negotiable instruments. This contract was a Kansas contract, and, while the decisions of United States courts are not controlled by decisions of state courts on a question of general commercial paper, Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580; Brooklyn City & N. Railroad Co. v. National Bank, 102 U. S. 14, 26 L. Ed. 61, the statutes of the state where the contract in question is made must be recognized and considered in construing the same. We set out some sections of the Kansas statutes applicable:

Section 6553. "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

Section 6556. "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Section 6585. "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable; but a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

Under these statutes it would seem clear that the printing company had all the rights of the bank in respect to all parties who had become such prior to that time, and that it made no difference that the printing company at the time of taking the instrument might have known that Toll was only an accommodation indorser. Value has been given on every transfer of the instrument, both before and after maturity. Toll was a party to the instrument prior to the first negotiation from the People's College to the printing company, and this was before maturity.

[17] Suppose, however, as claimed by plaintiff in error, that the transfer to the printing company by the bank after maturity did open the door to equitable defenses in the note, the want of consideration between Toll and the original payee was not such defense. Toll signed the note as an accommodation indorser. There was no consideration or he would not have been such indorser. He loaned his credit to the college; he intended it should be used; he expected the note to be transferred by the payee; he contracted to be bound to every person who took the note for value; and he cannot be heard to say, after he has taken part in and made possible the launching of this note upon the sea of negotiability, that its future voyage is of no concern to him. Daniel on Negotiable Instruments, § 726, enunciates the rule as follows:

"The general rule, that the purchaser of overdue paper can stand in no better position than his transferer, does not apply so far as to invalidate bills and notes drawn, indorsed, or accepted for accommodation, overdue at the time they are negotiated or transferred; it being considered that parties to accommodation paper hold themselves out to the public, by their signatures, to be bound to every person who shall take the same value, the same as if it were paid to themselves. And the fact that the purchaser knew that the paper was so drawn, indorsed, or accepted for accommodation, does not weaken his position."

Section 790 of the same authority states:

"It is to be observed, however, that knowledge of the mere want of consideration as between the original parties will not alone prevent the purchaser from becoming a bona fide holder and occupying a better position than his transferor. Accommodation paper is daily placed in market for discount or sale, and an indorsee, or purchaser who knows that a bill or note still current was drawn, made, accepted, or indorsed without consideration is as much entitled to recover as if he had been ignorant of the fact, and even where he acquires it overdue."

See Israel v. Gale, 174 U. S. 391, 395, 19 S. Ct. 768 (43 L. Ed. 1019).

Our general conclusion, whether based on the Kansas statutes or the general law of negotiable instruments, is that, the bank being a bona fide holder for value before maturity, could transfer the same to the printing company after maturity even if the printing company had notice that the note was a mere accommodation note; that the want of consideration as to an original indorser of an accommodation note is not a defense except as against the payee and can-

not be raised after the note has been negotiated, unless the note reappears as the property of the original payee. While we have discussed the general law of negotiable instruments in relation to failure of consideration, we are satisfied the question of want of consideration moving to Toll as an accommodation indorser is not in the case at all. The claim that the printing company knew when it took back the note after maturity that Toll claimed it to be a forgery is a different proposition.

[18] Whatever the law may be on the subject, the evidence does not sustain any such claim. Milligan testifies that Toll never raised the question of forgery until after his second visit to him, which was after the time that the note was taken over by the printing company. Toll testifies that the forgery was suggested at the first visit, so that there is a disputed question as to just when the printing company had any notice that Toll claimed the note to be a forgery. That question was not raised in the trial court. Certainly we cannot say from this record that it is undisputed that the printing company had any notice before they acquired the note that Toll claimed it to be a forgery. Therefore whatever legal question may be involved in such a situation is not here. It is also claimed that there is no proof that this note was the note of the college. We do not see how this claim can well be made. Mr. Milligan testified that the signature "J. I. Sheppard" on the face of the note, he having signed on behalf of the college as its president, was in fact the signature of Mr. Sheppard; that the indorsement thereon "The People's College, by J. I. Sheppard," was the signature of Mr. Sheppard. Miss Teagarden identified the note as having been made at the People's College and taken away by Mr. Sheppard without Mr. Toll's signature, after a conversation with Toll over the telephone, and when he returned with the note it had Toll's signature thereon. Mr. Milligan testified that Toll admitted it was his signature. It cannot, we think, be seriously urged that the evidence is not sufficient to show that this note was the note of the People's College.

[19] Complaint is also made that plaintiff in error was not permitted to go into the account of the printing company against the college. There seems to have been no particular question as to the correctness of the bill of the printing company. Mr. Milligan swore to its correctness, and no evidence was offered to the contrary. There was some effort on cross-examination to go into the question of just what circulars or matters had been printed for the college, but no evidence was offered to in any way question the correctness of the account. Nor was the evidence sought to be introduced that Toll had agreed with his employees not to sign notes as indorser, competent or material.

The real question in this case is the question of forgery. That was decided adversely to Toll. The jury found proper presentment had been made for payment, and the question of consideration between Toll and the payee is not really involved.

The judgment of the trial court is affirmed.