**IRVING TRUST CO. v. SIROTY et al.**

**In re MAYBROOK CLOTHES, Inc.**

**No. 367.**

Circuit Court of Appeals, Second Circuit.
July 5, 1932.

Morris & Samuel Meyers, of New York City (Emanuel Harris and Albert Adams, both of New York City, of counsel), for appellants.

Krause, Hirsch & Levin, of New York City (George C. Levin, of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The bankrupt, a small company selling clothes at retail, was in the habit of receiving suits "on consignment" from the defendant, Siroty; the title to remain in him until sale. On May 7, 1930, Siroty, becoming anxious because of a shortage of about six thousand dollars in the bankrupt's remittances for consigned goods sold, and especially because two of its cheques for nearly sixteen hundred dollars had been dishonored, sent his assistant to its shop, who with its consent took away as security one hundred and fifteen suits (the bankrupt's own), and secreted them in his home. Shortly thereafter Siroty learned of the bankrupt's insolvency, organized the other defendant, a corporation, and prevailed upon the bankrupt, in consideration of the release of his claim against it, to assign to him the suits and to the corporation the lease of its shop and the fixtures that went with it, delivering possession on the same day. An involuntary petition was filed on May twentieth, and this is a suit in equity by the trustee to declare both transfers invalid as preferences under section 60b of the Bankruptcy Act, 11 USCA § 96 (b). After the cause came on to be heard, the judge found that the bankrupt was insolvent on May seventh and sixteenth, and that Siroty was charged with notice of its condition at the earlier date. He also found the value of the suits as fifteen hundred dollars, and that of the lease and fixtures as thirty-five hundred dollars; and entered a decree for five thousand dollars against both defendants personally. They appealed.

The first point is that the decree should have been for a redelivery of the property, and for personal judgment only in case the defendants could not respond; this because section 60b only allows the trustee to recover "the property or its value." The point is an afterthought raised for the first time upon appeal, and we decline to consider it. The prayer of the bill was for an accounting of the "value of the property," alleged to be $1,500 for the suits and $7,500 for the lease and fixtures. At the trial although it appeared that the property was still in the defendants' possession, proof of its value was introduced without objection on this score. True, the defendants did object "on the ground that the prayer for relief is that a preference be declared and the property be turned over to the estate," which was a mistake. When the plaintiff answered that he did not want the property, the defendants retorted that he was confined to his prayer. At no time did they suggest that under an appropriate prayer—which there was—the relief was not open. This was made plain upon

the motion for a rehearing in which the affidavit of the defendants' attorney did not complain of a personal judgment, but only that he was surprised upon the issue of value, which he assumed would come up only upon a reference to a master to state the account. Moreover, after decree the defendants twice filed assignments of error, none of which even intimated anything of the kind. Finally, in their original brief on appeal they did not raise it, and the trustee did not answer it; only in the reply brief was it mentioned. There is not therefore the slightest reason to suppose that the case was defended on any such theory, and it is now too late to change. United Railways v. West, 280 U. S. 234, 249, 50 S. Ct. 123, 74 L. Ed. 390; Denver v. Denver Union Water Co., 246 U. S. 178, 185, 186, 38 S. Ct. 278, 62 L. Ed. 649; Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267; Kennelly v. Frederick Starr Contracting Co., 250 F. 229 (C. C. A. 2); Toll v. Monitor B. & P. Co., 26 F.(2d) 51 (C. C. A. 8).

■ Siroty knew that the bankrupt was insolvent when he took over the lease and fixtures; there had already been a creditors' meeting at which it was proposed to settle the claims for no more than twenty-five per cent. of their face. While the proof is not so plain of his knowledge on May seventh, it is enough. The bankrupt had the consigned merchandise on an arrangement under which it was to account for sales weekly. Though it does not appear that the proceeds were to be kept separate, that would be the usual understanding; and in any event it is obvious that default upon such an agreement meant far more than upon an ordinary debt. If not legally an embezzlement, it was morally no less; nobody would be guilty of it who was not hard pressed. In addition the bankrupt had twice given cheques in payment which came back dishonored; certainly it was very short of funds. Siroty took the suits by scarcely less than a seizure; his assistant went to the shop, got them wrapped or bailed, carried them off in a cab late at night to his home, where he kept them. This had every ear-mark of an irregular, indeed a dishonest, transaction; for it is no less to dip one's hand into a common pot which all creditors should share equally. The judge who saw Siroty did not believe his disclaimers and we cannot see, even in type, how he could have done otherwise.

■ The proof of value of the suits was enough; it came from the mouth of a disinterested witness experienced in such matters, who had examined the goods; but the same is not true as to the other property. All that the trustee showed was out of the mouth of one Kirschner, the bankrupt's accountant. He and the Sisenweins, the two owners of the bankrupt company, had appraised these at thirty-five hundred dollars, when the bankrupt was organized about a year and a half before the witness testified. They had been bought for twice that amount two years before they were so appraised. The witness was not shown to have had any familiarity with the value of such property, nor did he know anything more than that they had been carried on the books at the reduced appraisal. Neither of the Sisenweins was called, nor was it shown why they had appraised them at half their value, or that they were competent in such matters. Besides, it by no means followed that if worth thirty-five hundred dollars in September, 1929, they were of the same value in April, 1931, when Kirschner testified, or a year before, if his estimate is to be referred to the date of the bankruptcy. The only other evidence was Siroty's who set their value at two hundred and fifty dollars. However, upon a motion for a rehearing one of the defendants' witnesses put it at five hundred dollars in a going business, and this may be taken as an admission, unless the plaintiff wishes to go back to a new hearing. We do not think that there was any other competent evidence presented and no more can be allowed as the record stands. Indeed, it is extremely unlikely, if not impossible, that fixtures of the kind should have anything like thirty-five hundred dollars' value, except as a part of a going business. If taken out and sold they would bring very little.

The other property was the good will, which had no value, and the term, which had two years more to run at a yearly rent of seventy-five hundred dollars. No evidence was introduced as to its value, and Siroty appears to have continued the business at a loss. Although the bankrupt had put up a deposit of one thousand dollars as security, this had no calculable value; to give it any we must conclude that the term was worth more than seven thousand dollars a year, which would be entirely gratuitous. We cannot find any basis for a recovery of more than five hundred dollars.

■ Finally, it does not appear that the corporate defendant ever received any part of the suits transferred on May seventh, and it should not be charged with them. On the other hand Siroty was privy to the whole transaction in such sense as made him gen-

erally liable. Brainard v. Cohen, 8 F.(2d) 13 (C. C. A. 9).

The decree is affirmed as to Siroty for $1,500, the value of the suits, but reversed as to the corporate defendant; it is reversed as to both defendants as to $3,500, the value fixed for the other property, unless the plaintiff agrees to remit $3,000, in which case it is affirmed as to both in the sum of $500. No costs.