FIRST NATIONAL HOLDING COMPANY OF LISBON, NORTH DAKOTA, Respondent, v. E. J. MOORE, Appellant.

(232 N. W. 310.)

28

Opinion filed August 1, 1930. Rehearing denied October 14, 1930.

*M. A. Hildreth,* for appellant.

*Clarence G. Mead,* for respondent.

BURKE, Ch. J.   On May 17, 1924, one R. S. Adams wrote a letter to the defendant, E. J. Moore, asking Moore to sign an accommodation note for $1,000, adding:   "I can give you security if you wish, although I think my note is good."

On receipt of this letter, the defendant signed the note which was made payable to the First National Bank of Lisbon, for $1,000 returning this note either to the bank or to R. S. Adams, and keeping the note signed by R. S. Adams for $1,000, and payable to the defendant.

On November 4th, 1924, the defendant wrote to R. S. Adams as follows:

"My dear Rushe:

"Have just received the enclosed note from the bank, which, I take it, is the accommodation note I signed for you.   Do you wish to renew the note?   If so send me a new one for signature.   I presume that you will take care of the interest thereon, or I can send you a check for the interest if you would prefer.   .   .   .

"[Signed] E. J. Moore."

From the bank books of the First National Bank of Lisbon, it appears that a cashier's check for $1,000 payable to the defendant, E. J. Moore, was issued and delivered to the said R. S. Adams, and was paid on the 23rd day of May 1924. This check was shown to have been lost or destroyed and could not be introduced in evidence. The note given by the defendant was renewed from time to time, the last renewal being on the 20th of June, 1927, and which is the note in suit.

On the 19th day of June, 1928, the First National Bank of Lisbon failed, and one William McKelvie was appointed receiver.

Sometime in 1927, R. S. Adams died, and the defendant testified that after Mr. Adams' death, "his son was appointed executor and he asked me to file a claim. He told me, his father told him, he owed me a thousand dollars and asked me to make a claim against the father's estate, which I did, and along in September he sent me a check for two hundred dollars signed, S. D. Adams, administrator of the estate of R. S. Adams, to apply on that note. I considered it my duty to give it to the bank, on the note which I had given him in exchange, I had given the bank for him or given him for the bank. When the bank would notify me that the note was due, I would simply refer the matter to him (Mr. Adams) and he would send me a new note. I didn't pay any interest. I couldn't say who did." The two hundred dollars paid was endorsed on the note in suit, October 1, 1927.

On the 19th day of June 1928, the plaintiff, the First National Holding Company, of Lisbon was incorporated for the purpose of taking over the assets of the First National Bank of Lisbon, and among the assets assigned to the First National Holding Company by the receiver was the note in suit in this action, "Exhibit E."

At the close of the testimony at the trial the plaintiff moved for a directed verdict, which was overruled, and the jury returned a verdict for the defendant. Thereafter the plaintiff moved for judgment notwithstanding the verdict which motion was granted, and from the order granting said motion, and the judgment entered thereon, the defendant appeals.

It is the contention of the defendant, that the certified copy of the appointment of William McKelvie as receiver of the First National Bank of Lisbon, was not admissible in evidence. The copy is certified

to by F. G. Awalt, acting comptroller of the currency, as a true and complete copy of the original commission of William McKelvie, as receiver of the First National Bank of Lisbon, under the seal of the comptroller of the currency, and it seems to be a full compliance with subdivision 8 of § 7919, Comp. Laws 1913, which provides for the admission in evidence of documents in the departments of the United States government, by the certificate of the legal custodian thereof; and § 884, Revised Statutes of the United States, U. S. C. title 28, § 663, which provides that all copies of papers in the office of the comptroller of the currency shall be received in evidence in all places and courts when certified by the comptroller and authenticated by his seal. State v. Kilmer, 31 N. D. 449, 153 N. W. 1089, Ann. Cas. 1917E, 116; Harmening v. Howland, 25 N. D. 42, 141 N. W. 131. The certified copy of the appointment of the receiver was clearly admissible.

Appellant's next contention, is, that the certified copy of the *articles* of incorporation of the First National Holding Company of Lisbon, was not admissible. The secretary of state certifies, "that the copy has been compared by me with the original articles of incorporation now on file and of record in this department and that the same is a true copy thereof and of the whole of such articles. [Signed] Robert Byrne, Secretary of State, by Charles Leissman, Deputy." This certificate is a compliance with § 4514, Comp. Laws 1913, which provides that "A copy of any articles of incorporation filed in pursuance of this chapter, and certified by the secretary of state, must be received in all courts and other places as prima facie evidence of the facts therein stated and of the existence of such corporations." The admission of the copy of the articles of incorporation so certified was not error.

There are a great many specifications of error on the admission of testimony, and on the instructions to the jury, but since the jury found a verdict for the defendant, if there was error in the instructions, and in the admission of testimony it was without prejudice to the defendant. In passing upon the question of plaintiff's motion for judgment, notwithstanding the verdict, it is presumed, that the trial court considered only competent testimony and that is all that will be considered by this court.

It is clear from the evidence in the case that R. S. Adams was badly in need of money when he wrote the letter, "exhibit D," to defendant

in May, 1924. He stated in the letter that he needed a thousand dollars; that he could not collect a dollar from those who owed him; that he did not want to extend his line at the bank, and therefore, he wanted the defendant's note so that he could get the money which he needed. The defendant understood that Adams intended to dispose of the note for value, in fact, the letter is couched in very plain language and Adams is not only willing to exchange notes, but he also offers to give him security. If the defendant was not to become liable on the note why should Adams offer to give him security? The security was offered for the protection of Moore in case he had to pay the note, but Moore testified, that he thought the note Adams gave him was good, and doubtless it would have been good if Adams had not died. The defendant signed the note and turned it over without any restriction whatever. He knew that it was made payable to the First National Bank of Lisbon; that Adams did not want to extend his line of credit at the bank, and that Adams wanted it kept confidential. The cashier's check for a thousand dollars, payable to Moore, was given to Adams and according to the books of the bank it was paid on the 24th of May, 1924. Adams must have got the money, that is what he got the note for. The defendant gave him the note so that he could get the thousand dollars which he needed. Section 6914, Comp. Laws 1913, provides: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." A consideration from the bank to the defendant was not necessary, in fact, it was not intended that the bank should pay the defendant for the note. It is enough, if the bank is a holder for value and the bank's knowledge that the note is an accommodation note does not affect the liability of the defendant. His liability is fixed by the statute, viz., 6914, Comp. Laws 1913, which is § 29 of the Uniform Negotiable Instruments Law, and is so plain that authorities are not necessary. However, a case very much in point is the case of Israel v. Gale, 174 U. S. 391, 43 L. ed. 1019, 19 S. Ct. 768. In this case the defendant testified, "At the time I made this note I did not receive any valuable thing or consideration

for the making of it. . . . He stated to me the object or purpose for which he desired the note. He said to me, that he desired some accommodation notes, that he wanted us clerks to make them. He said that the reason he wanted the accommodation note was that he had exceeded his line of discount and could not get any more accommodation . . ." He also added, that we would not be put in any position of paying them at any time, that he would take care of them." In this case, like the case at bar, the note was not made payable to the accommodated party but to a bank. On this testimony of the defense the district court granted a motion to direct a verdict for the plaintiff. It was affirmed by the circuit court of appeals and also by the supreme court.

3 R. C. L. p. 1068, § 274, states the rule as follows: "No consideration moving to the accommodation maker is necessary to uphold an accommodation note. The very name of the paper suggests this. The consideration in such case which supports the promise of the accommodation maker is that parted with by the person taking the accommodation note and received by the person accommodated."

"The nature of accommodation paper presupposes that no consideration was given for it, and if the accommodation endorser could defeat the note because he received no consideration that would eliminate accommodation paper from all commercial transactions." Elgin Nat. Bank v. Goecke, 213 Ill. App. 559.

On the testimony of the defendant, the correspondence between him and S. D. Adams, and the records of the bank heretofore quoted, the motion for judgment notwithstanding the verdict was properly granted and the order and judgment appealed from must be and are affirmed.

BURR, NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.

## On Petition for Rehearing.

BURKE, Ch. J. In a petition for a rehearing appellant insists that exhibit "F," a certified copy of the certificate of appointment of the receiver was not admissible, first, because it is a copy and, second, because the certificate does not comply with the statute. The certificate is as follows:

"Certificate for Certified Copy.

"TREASURY DEPARTMENT, ⎫
  "Office of     ⎬ ss.:
"Comptroller of the Currency. ⎭

"Under the provisions of § 884, of the Revised Statutes of the United States, U. S. C. title 28, § 663, I, F. G. Awalt, Acting Comptroller of the Currency, do hereby certify that the paper hereto attached is a true and complete copy of the original commission of William Mc-Kelvie as Receiver of the First National Bank of Lisbon, North Dakota, dated January 21, 1928, and signed J. W. McIntosh, Comptroller of the Currency, and of the whole of such original on file and of record in this office, and I further certify that William McKelvie acted continuously as Receiver of this bank from the date of his appointment of May 31, 1929.

"IN TESTIMONY WHEREOF, I have hereunto subscribed my name and caused my seal of office to be affixed to these presents at the Treasury Department, in the City of Washington and District of Columbia, this second day of November, A. D. 1929.

       "[Signed] F. G. Awalt,
"[Seal]       "Acting Comptroller of the Currency.
Form 1980.
2-23-29--1000."

The certificate filed complies with the statute and also with Federal Statute, § 884 [U. S. C. title 28, § 663]. It certifies "that the paper attached is a true and complete copy of the original commission of William McKelvie as Receiver of the First National Bank of Lisbon, North Dakota, . . . and of the whole of such original on file and of record in this office." It is signed by the acting comptroller of the currency and sealed with the seal of the comptroller of the currency.

Section 884, Federal Statutes Annotated, Vol. 3 (U. S. C. title 28, § 663) reads as follows:

"Every certificate, assignment, and conveyance executed by the Comptroller of the Currency, in pursuance of law, and sealed with his seal of office, shall be received in evidence in all places and courts; and

all copies of papers in his office, certified by him and authenticated by the said seal, shall in all cases be evidence equally with the originals. . . ."

This latter section was construed by the supreme court of Nebraska in the case of Davis v. Watkins, 56 Neb. 288, 76 N. W. 575, in which the court said:

"But this exhibit is the original certificate, writing, or commission issued by the comptroller of the currency appointing Watkins receiver. If this appointment or writing had been deposited in the comptroller's office, then a copy thereof certified by him, and attested by his seal, would, by reason of the statute just quoted, have been competent evidence equally with the original, and the seal would have authenticated the genuineness of the comptroller's signature. . . ."

It was also construed by the Supreme Court of Massachusetts in the case of Weitzel v. Brown, 224 Mass. 190, 112 N. E. 945, in which the court said:

"It is plain under these statutes that all of the certificates from the comptroller's office authenticated by his seal were admissible in evidence. Keyser v. Hitz, 133 U. S. 138, 33 L. ed. 531, 10 S. Ct. 290; Bowden v. Johnson (Adams v. Johnson) 107 U. S. 251, 27 L. ed. 386, 2 S. Ct. 246; Wigmore, Ev. §§ 1677 to 1684."

There is no merit to appellant's contention that the certificate should state that the copy was compared with the original on file in the office of the comptroller of the currency. The statute does not require it. The certificate does state that the document "Is a true and complete copy of the original commission . . . and of the whole of such original on file and of record in this office" and this implies that there was a comparison of the original and the copy.

Appellant also insists that we have overlooked the evidence, that there is nothing to show that the defendant knew all about the transaction any more than the bank knew all about it. Of course the bank knew all about it the same as the defendant. The correspondence shows conclusively that Adams needed a thousand dollars; that he wrote his friend Moore, sending him a note for a thousand dollars payable to the defendant bank, which he asked him to sign; told him in very plain language that he needed a thousand dollars; that he did not want to extend his credit at the bank and asked the defendant to exchange

notes; that he would give him security if he desired it; that the defendant thoroughly understanding that Adams wanted the money, signed the note to the bank, returned it, and kept the Adams note. He did not ask for security because he thought the Adams note was good. The bank knew all about the transaction, knew that the defendant didn't get any money, but that doesn't make any difference; defendant gave Adams the note so that Adams could get the money and since the bank parted with money for the note, the defendant is liable on it, and the petition for the rehearing must be denied.

CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur.