[File No. 7039]

FIRST STATE BANK OF HOPE, a Corporation, Respondent, v. HANNA STAVENS BORGLUM, Appellant.

(27 NW2d 230)

Opinion filed April 28, 1947

*Chas. H. Shafer,* for appellant.

*A. E. Dolezal* and *Wattam, Vogel & Vogel,* for respondent.

BURKE, J. This is an action to foreclose a pledge given as security for the payment of a promissory note. Plaintiff's complaint is in the form usual in such actions. In her answer defendant denied that she executed the specific note and pledge agreement upon which the suit is based and she alleged that if the plaintiff was the holder of the instruments described in the complaint, that such instruments had been obtained from her by fraud and without any consideration. The trial court found in favor of the plaintiff and judgment was entered decreeing that there was due and owing from the defendant to the plaintiff upon the note described in the complaint the sum of $1444.16 and directing the sale of pledged securities sufficient to satisfy such indebtedness. A motion for a new trial, thereafter made, was denied by the trial court. This appeal is from the judgment and from the order denying a new trial. A trial de novo is demanded in this court.

The defendant, Mrs. Borglum, is one of three daughters of Andrew H. Stavens, deceased. Mr. Stavens died in January 1934, leaving an estate which consisted, in a large part, of equities in encumbered real property. M. S. Awes, husband of Louise Stavens, and brother-in-law of the defendant, was the manager of the property of the Stavens' estate.

According to plaintiff's version of the facts, M. S. Awes sought a loan from the plaintiff bank shortly before November 12, 1936, for the purpose of paying obligations of the Stavens' estate. The bank would not make the loan upon Mr. Awes signature alone but agreed to make it "if certain conditions were met." The bank furnished Mr. Awes with a blank note and a form of pledge agreement which he took to Mrs. Borglum. At the time he presented the instruments to Mrs. Borglum for signature, they were complete in all other respects. That is to say, the note was dated Nov. 12, 1936, it was for $1400.00 payable to the plaintiff bank on March 15, after date with interest at 7% per annum, and the pledge agreement dated the same day contained a description of all shares of defendant's stock which were being pledged and in addition a description of certain notes belonging to M. S. Awes. After the instruments were

signed by Mrs. Borglum, Awes delivered them to the plaintiff bank. He guaranteed payment of the note by endorsing it as follows: "For value received, I hereby guarantee the payment of the within note at maturity or at any time thereafter, and hereby agree and consent to all the stipulations contained therein." The bank thereupon completed the loan by crediting Mr. Awes' personal account with the sum of $1400.00. This entire sum was thereafter expended by Mr. Awes in payment of obligations of the Stavens' estate. The note bears some twenty endorsements of payments of principal and interest, commencing with December 2, 1936 and ending with September 9, 1941. These payments reduced the principal of the note to $969.28 and paid the interest to November 7, 1938. None of these payments was made by the defendant. For the most part they were from collections made on the notes deposited by Mr. Awes as collateral. There are very few points, however, at which defendant's version of the facts agrees with that of the plaintiff. She admitted that she signed the note and pledge agreement but there the accord ends. Defendant stated that she came to visit her brother-in-law and sister, Mr. and Mrs. Awes, at the home farm near Hatton on the occasion of their twenty-fifth wedding anniversary on June 26, 1938. On the following morning Mr. Awes attempted to persuade the two sisters to borrow some money to take care of obligations of the Stavens' estate. They dissented. The conversation was interrupted when Mr. Awes left to take his father and brother to the railroad station. In the afternoon Mr. Awes came in in a hurry. He said, "On my way to Fargo today, I came by the Mapleton farm, and the Chesley Lumber Company men were tearing down the granary on the farm. I stopped the carpenters for two hours, and if I could get the money to the bank at Hope and have it wired to Fargo within two hours they wouldn't take down any more of the granary." Thereafter, against her judgment and over her protests, he persuaded her to agree to pledge ten shares of bank stock in order to secure a loan to save the granary. Mr. Awes then produced a blank note and a blank pledge agreement which he asked her to sign, stating that there wasn't time

to fill them out because he had to get to the bank at Hope in twenty or thirty minutes. She signed the instruments in blank but told him that he could have $500.00 or at most $600.00. Thereafter Mrs. Borglum gave the matter no attention until October 1941, when she called at the bank at Hope for her bank stock. Mr. Pederson, cashier of the bank, told her that she could not have her certificate because there was still something against it. He produced the note and pledge agreement and she was "shocked and stunned" to learn that the note was for $1400.00 and that in addition to the bank stock, twenty shares of telephone company stock had also been included in the pledge agreement.

Although Mrs. Borglum was very positive in all her statements, the trial court found that her memory of the transaction in question was inaccurate. He found that on November 12, 1936 she did execute a note for $1400.00 payable to the plaintiff bank and that at the same time and as a part of the same transaction she executed a collateral agreement pledging 10 shares of bank stock and 20 shares of telephone stock as security for the payment of the note. He also found that the entire proceeds of the loan were expended by Mr. Awes for the benefit of Mrs. Borglum and her sisters, in an attempt to save the equities in properties to which they were the heirs.

We think the evidence amply sustains the trial court's findings. Mrs. Borglum was most positive in her testimony as to the date upon which she signed the note. Upon that question it is very clear that her memory is inaccurate. She fixed the date as June 27, 1938. The note is dated November 12, 1936. On its face it shows twenty separate payments of principal or interest, eighteen of which were made prior to the date on which she claims the note was signed. She stated that the purpose of the loan was to save a granary on the Mapleton farm. The records show conclusively that complete and final settlement with the Chesley Lumber Company for this granary was made on July 15, 1936. Furthermore, while we do not question that Mrs. Borglum is relating the facts in accordance with her memory, we find it exceedingly difficult to believe, either that Mr.

Awes would tell her what she relates he told her in connection with the loan, or if he did, that she would believe him. If. we accept the story literally, we would have to believe that Mr. Awes left the Hatton farm sometime in the morning of June 27, 1938, took his father and brother to the railroad station and then drove some seventy miles to Mapleton. There he made arrangements with the workmen to discontinue destruction of a granary for two hours to give him time to raise the money to pay for it. He allowed two hours time to drive thirteen miles to Fargo, eighty miles back to Hatton, make arrangements with Mrs. Borglum for the loan, then drive forty miles from Hatton to Hope, complete the loan with the bank there, wire the proceeds to Fargo and have the Chesley Lumber Company, after receiving its money, notify its workmen thirteen miles away at Mapleton. Mrs. Borglum's testimony with respect to her endorsement of the telephone stock and her explanation of why she never missed it from her files, is unsatisfactory. She said she endorsed the certificate to keep it up to date, and that she didn't miss it because she never looked in the file where it was kept, although she and her husband moved to California in 1939. If her account in this regard is true, she is a person who gave minimum attention to business transactions.

Upon the whole record we are satisfied that Mrs. Borglum is confused, that in her recollection she has intermingled elements of other transactions. Mr. Awes had been manager of the Stavens' properties during Mr. Stavens' lifetime, he continued as such after Stavens' death. The estate was heavily burdened and there were many transactions with its creditors in which the heirs participated. In this connection it is noteworthy that the amount of $600.00 mentioned by Mrs. Borglum was the precise amount of the settlement for the granary on the Mapleton farm, although the settlement was not made at the time she fixed. It is true, as Mrs. Borglum states, that she received none of the proceeds of the note and that no consideration passed to her directly at the time of the transaction. She was, however, an accommodation maker. The payee plaintiff gave full value for the note and the party intended to be ac-

commodated received the full amount thereof. The consideration which passed to the accommodated party is sufficient to sustain the note as against the accommodation maker. First Nat. Holding Co. v. Moore, 60 ND 27, 232 NW 310; Section 41–0306 Rev Code 1943.

In the decision in this case the trial court also found that the payee bank was a "holder in due course" and that defendant's defenses were barred by estoppel. Error is specified upon both holdings. Since we have found against the defendant upon the facts, an expression of our opinion upon the other questions raised would be merely obiter.

The judgment of the trial court is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and MORRIS, JJ., concur.